ESTATE OF MARY E. COOK, DECEASED, MAYNARD M. DONALDSON, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 7354, 9833.   Promulgated September 30, 1947.

*Roger K. Powell, Esq.*, and *D. Curtis Reed, Esq.*, for the petitioner. *Cecil H. Haas, Esq.*, for the respondent.

## OPINION.

LeMire, *Judge*: The evidence before us is convincing, and we have found as a fact, that the transfers here in controversy were not made in contemplation of death within the meaning of section 811 (c), Internal Revenue Code, as that section of the statute has been construed by the United States Supreme Court. See *United States* v. *Wells*, 283 U. S. 102. We think that the gifts in question were actuated by motives associated with life, rather than matters related to death.

The decedent had property and income far beyond her own needs and her children, though perhaps not in dire need, were in circumstances at least conducive of her generosity. The increase in income taxes was of much concern to the decedent and her attorney. It was to lessen these income taxes that the attorney suggested the transfers/of the Pittsburgh Press Co. preference shares to the children's trusts in 1939. The decedent's anxiety for the comfort and well-being of her children and grandchildren and her willingness to help them get established in business and in their new home supplied the other motives for the transfers.

The transfer to Helen Louise of a one-half interest in the residence in which she and the decedent lived together was for the purpose of partially equalizing the gifts to the three children and of giving the unmarried daughter an interest in her own home.

There is no evidence anywhere in the record that any of the gifts in question were prompted by motives relating to death. All of her life, to within a short time of her death, the decedent had been energetic, alert, and much interested in the world about her.

We think the respondent was in error in treating the transfers in question as transfers made in contemplation of death.

The remaining issue relates to valuation of preference shares of Pittsburgh Press Co. This issue is present in both the gift tax proceeding, Docket No. 7354, with respect to the 900 shares which the decedent transferred to the children's trusts on December 10, 1941, and in the estate tax proceeding, Docket No. 9833, with respect to the 100 shares which the decedent still owned at the time of her death.

The stock in question was reported in the gift tax return filed by decedent for 1941 at $40 per share and in the estate tax return filed by her executors at $60 per share. The respondent has determined that the value of these shares was $90 each on both of the valuation dates. The petitioner contends on brief that the stock had a value of $65 a share on December 10, 1941, and $58.50 at the date of decedent's death.

The stock was closely held at all times and there are no available records of any sales thereof at or near the valuation dates. The petitioner produced two witnesses, experienced dealers in securities, who undertook to value the shares on the basis of the information available to them. They did not have before them and did not take into consideration the business or financial condition of the issuing company and its earnings.

Based on the evidence as a whole, we find that the shares in question had a value of $75 each on December 10, 1941, and on May 29, 1942.

*Decisions will be entered under Rule 50.*